UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| T.R., | Case No. 5:16-cv-02676-SHK |
|---|---|
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff T.R.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

reasons discussed below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

On July 10, 2010, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled based on prior DIB and SSI applications protectively filed on April 17, 2008. Transcript ("Tr.") 725.[2] Thereafter, Plaintiff filed the instant DIB and SSI applications on June 20, 2011, alleging disability beginning on September 26, 2007. Tr. 188-202. Following a denial of benefits, Plaintiff requested a hearing before an ALJ, and, on April 5, 2013, ALJ Marti Kirby determined that Plaintiff was not disabled. Tr. 24-36. Plaintiff sought review of the ALJ's decision with the Appeals Council ("AC"); however, review was denied on May 28, 2014. Tr. 1-7. Plaintiff sought district court review of the Commissioner's unfavorable decision and, on August 17, 2015, the district court reversed the Commissioner's decision and remanded the case for further proceedings. Tr. 807-19.

On August 15, 2016, ALJ Kirby again determined that Plaintiff was not disabled. Tr. 722-45. Plaintiff sought review of the ALJ's decision with the AC; however, review was denied on October 28, 2016.[3] Tr. 710-21. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more

---

[2] A certified copy of the Administrative Record was filed on June 19, 2017. Electronic Case Filing Number ("ECF No.") 21. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

[3] Though the AC declined to "assume jurisdiction in this matter" and concluded that "[t]he [ALJ's] decision is the final decision of the Commissioner, the AC provided five paragraphs of analysis, complete with substantive findings and citations to the record. Tr. 710-11.

2

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB or SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[4]

> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant's impairment is severe, then the claimant's case cannot be

---

[4] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB or SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB or SSI]. See 20 C.F.R. §§ 404.1520(f),

404.1562. If the Commissioner cannot meet this burden, then the
claimant is "disabled" and therefore entitled to [DIB or SSI]. See id.
Id. at 1098-99.

**B.     Summary Of ALJ's Findings**

Before making any findings in the above discussed five-step sequential evaluation process, the ALJ first determined that Plaintiff had rebutted the presumption of continuing nondisability that flowed from Plaintiff being found not disabled previously in 2010.[5] Tr. 726. The ALJ found that Plaintiff had submitted new evidence after the prior ALJ's decision "that is material to the severity of [Plaintiff's] mentally determinable impairments that was not previously considered, which resulted in a finding different from the finding made in the prior decision."[6] Id. The ALJ, therefore, did not give *res judicata* effect to the findings of the prior ALJ when examining Plaintiff's instant DIB and SSI applications in the five-step sequential evaluation process discussed below. Id.

The ALJ first determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2012." Tr. 728. The ALJ then found, at step one, that "[Plaintiff] has not engaged in [SGA] since September 26, 2007, the alleged onset date (20 C.F.R. 404.1571 et seq. and 416.971 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obesity, depressive disorder

---

[5] A binding determination of nondisability at the ALJ or AC level "creates a presumption that the claimant continued to be able to work after that date." Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1996) (internal quotation marks omitted). Thus, "in order to overcome the presumption of continuing nondisability arising from the first [ALJ's] findings on nondisability, [a claimant] must prove changed circumstances indicating a greater disability." Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (internal quotation marks omitted). Changed circumstances can include "[a]n increase in the severity of the claimant's impairment" or "a change in the claimant's age category, as defined in the Medical–Vocational Guidelines [the (Grids")]." Lester, 81 F.3d at 827.

[6] The ALJ's res judicata analysis began in the middle of a sentence. Thus, the ALJ's entire analysis does not appear to be before the Court.

6

with psychotic disorder, anxiety disorder with panic attacks and a history of polysubstance dependence including amphetamine use (20 CFR 404.1520(c) and 416.920(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 728-29.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to sit, stand and/or walk for six hours out of an eight-hour workday provided he is able to shift positions at will. He is able to perform postural maneuvers occasionally but cannot climb ladders, ropes or scaffolds. Further, he is to avoid working around hazards such as unprotected heights and moving machinery. He is to avoid concentrated exposure to fumes, odors, gases, smoke and other pulmonary irritants. He cannot work in any type of job that requires hypervigilance or intense concentration on a particular task meaning preclusion of jobs where the very nature of the work itself is such that the person could not be off task for even the smallest amount of time such as watching a surveillance monitor where safety might be an issue. Further, he is capable of only low stress work with no fast-paced production or assembly line type work. He is able to concentrate for up to two hours at a time but would be limited to unskilled tasks in a non-public work setting. Lastly, he is limited to occasional, non-intense, superficial contact with co-worker and supervisors as well as being limited to object oriented work requiring no teamwork.

Tr. 731. At step four, the ALJ found that "[Plaintiff] in unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." Tr. 738.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on December 26, 1975 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 4416.963)." Id. The ALJ also noted that "[Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964)." Id. The ALJ added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Tr. 739.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." Id. Specifically, the ALJ found that Plaintiff could perform the "light exertional, unskilled (SVP 2)" occupations of "marking clerk" as the occupation is defined in the Dictionary of Occupational Titles ("DOT") at DOT 209.587-034, with 43,000 jobs nationally; "routing clerk, DOT code 222.587-038," with 46,000 jobs nationally; and "mail clerk, DOT code 209.587-026," with 18,000 jobs nationally. Id. The ALJ based her decision that Plaintiff could perform the aforementioned occupations on the VE's testimony from the administrative hearing that, the ALJ found, was "consistent with information contained in the [DOT]." Tr. 739.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" at step five, the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from September 26, 2007, through [August 18, 2016], the date of th[e] decision (20 CFR 404.1520(g) and 416.920(g))." Id.

**C. Issues Presented**

In this appeal, Plaintiff raises three issues, including whether: (1) the ALJ erred by not providing specific and legitimate reasons for rejecting the opinions of Plaintiff's treating psychiatrist, Dr. Mahfoozi, or psychological consultative examiner Dr. Michael;[7] (2) Plaintiff's RFC limitation to superficial contact precludes Plaintiff from performing work in unskilled occupations; and (3) Plaintiff's lack of a high school education prevents Plaintiff from performing the occupations identified by the ALJ at step five. ECF No. 32, Joint Stipulation at 5-6; Tr. 718-19.

**D. Court's Consideration Of Each Of Plaintiff's Arguments**

    **1. ALJ's Consideration Of Plaintiff's Treating Doctor's Opinion**

The ALJ assigned "little weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Mahfoozi, dated July 10, 2011, and May 4, 2016, for four reasons. First, the ALJ noted that Dr. Mahfoozi "determined that [Plaintiff] was markedly limited with social and cognitive functioning[,]" while "the overall trend" in Plaintiff's treatment records "shows [Plaintiff] reporting a decrease in his symptoms and unremarkable mental health status examinations." Tr. 736.

Second, the ALJ found that "Dr. Mahfoozi's treatment notes showing repeatedly unremarkable mental health status examinations coupled with his ongoing treatment of monthly 15-minute sessions with no recommendation of more extensive therapy indicates that his opinions are based on [Plaintiff's] subjective symptom complaints and not grounded in the clinical evidence." Tr. 736-37.

---

[7] Plaintiff's challenge to the ALJ's rejection of Drs. Mahfoozi's and Michael's opinions appeared in the Joint Stipulation in Plaintiff's challenge to whether his RFC precludes him from performing work in unskilled occupations. See ECF No. 32, Joint Stipulation at 6. Plaintiff also briefed this issue at length in Plaintiff's request for AC review, which, as discussed above, the AC made part of the record before "declin[ing] to assume jurisdiction in the matter" and declining review of the ALJ's decision. Tr. 710-11, 718-19.

Third, the ALJ noted "with symptoms as severe as Dr. Mahfoozi has expressed it is remarkable that [Plaintiff] has not required frequent emergency care and hospitalization and has been able to remain capable of being the caregiver for his six children[,]" and "it is surprising that Dr. Mahfoozi would continue with just 15 minute monthly sessions and would not have suggested more extensive behavioral therapy or more frequent psychiatric sessions." Tr. 736.

Finally, the ALJ noted that "checklist opinions are weak evidence at best and rejection of a treating physician's opinion is appropriate when the conclusions are in the form of a checklist and the treating notes do not provide objective medical evidence of the limitations asserted." Id. (citations and internal quotation marks omitted).

### 2. Dr. Mahfoozi's Treatment History And Opinions
#### *a. Dr. Mahfoozi's Treatment History*

Aside from a window of time spanning from July 2012 to September 2015, when Plaintiff did not have insurance and sought treatment at the Riverside County Department of Mental Health, Dr. Mahfoozi provided Plaintiff with what the ALJ described as "fairly consistent mental health treatment" from December 2008 to May 2016.[8] Tr. 718, 730. During the time period that Dr. Mahfoozi treated Plaintiff, Dr. Mahfoozi assessed Global Assessment Functioning ("GAF") scores[9]

---

[8] Dr. Mahfoozi noted in Plaintiff's medical record, on December 16, 2008, that Plaintiff had previously seen Dr. Mahfoozi on February 14, 2006. Tr. 397-98. However, the Court can find no other evidence of this appointment in the record.

[9] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (citation and internal quotation marks omitted). "According to the [Diagnostic and Statistical Manual of Mental Disorders (4th ed., rev. 2000) ("DSM-IV")] "a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'" Id. (quoting DSM-IV). "A GAF score between 51 to 60 describes 'moderate symptoms' or ['']any moderate difficulty in social, occupational, or school functioning.'" Id. (quoting DSM-IV). "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or

10

ranging from forty-two to fifty on fourteen different occasions. Specifically, Dr. Mahfoozi assessed Plaintiff as having GAF scores of 42,[10] 45,[11] 48,[12] and 50[13] throughout his longitudinal treatment of Plaintiff. Dr. Mahfoozi also noted and assessed multiple instances of auditory hallucinations,[14] visual hallucinations,[15] paranoid ideations or delusions,[16] worried mood,[17] sad mood,[18] apathetic mood,[19] depressed mood,[20] anxiety or anxious mood,[21] angry mood,[22] fearful mood,[23] major depression with psychotic features,[24] panic attacks,[25] loose association in thought

---

interact with physical impairments to create a disability), they may be a useful measurement." Id.

[10] See Tr. 635, 1026 (GAF score of 42 assessed).

[11] See Tr. 368, 373, 549, 554, 638, 643, 648 (GAF score of 45 assessed).

[12] See Tr. 378, 379, 396, 653 (GAF score of 48 assessed).

[13] See Tr. 391 (GAF score of 50 assessed).

[14] See Tr. 368, 369, 370, 373, 378, 379, 382, 383, 384, 385, 386, 387, 388, 389, 391, 402, 549, 553, 635, 636, 638, 642, 643, 644, 645, 648, 653, 655, 1026, 1027 (auditory hallucinations assessed).

[15] See Tr. 387 (visual hallucinations assessed).

[16] See Tr. 368, 369, 370, 373, 374, 377, 378, 379, 382, 383, 384, 385, 386, 387, 388, 389, 391, 402, 548, 549, 553, 635, 637, 638, 642, 643, 644, 645, 648, 652, 653, 1026 (paranoid ideations or delusions assessed).

[17] See Tr. 369, 375, 381, 382, 390, 394, 402, 553, 642, 644, 650, 655 (worried mood assessed).

[18] See Tr. 371, 646 (sad mood assessed).

[19] See Tr. 376, 552, 641, 645, 651 (apathetic mood assessed).

[20] See Tr. 369, 371, 375, 381, 387, 390, 393, 394, 395, 398, 402, 553, 636, 642, 644, 646, 648, 650, 655, 924, 1027 (depressed mood assessed).

[21] See Tr. 381, 390, 391, 393, 394, 395, 398, 548, 635, 637, 655, 924, 1024 (anxiety or anxious mood assessed).

[22] See Tr. 389, 393, 398 (angry mood assessed).

[23] See Tr. 394, 553, 642 (fearful mood assessed).

[24] See Tr. 368, 369, 370, 373, 378, 379, 388, 389, 391, 396, 397, 402, 548, 549, 554, 635, 636, 637, 638, 643, 644, 645, 646, 648, 653, 1026, 1027 (major depression with psychotic features assessed).

[25] See Tr. 368, 373, 378, 379, 380, 549, 638, 648, 654 (panic attacks assessed).

11

process,[26] thought "blocking[,]"[27] circumstantial thought processes,[28] flights of ideas,[29] "stuporous" alertness,[30] and dizziness[31] throughout the multiple years he treated Plaintiff. Dr. Mahfoozi also recommended, on five separate occasions, that Plaintiff's psychiatric treatment sessions increase in duration from fifteen to thirty minutes per session.[32]

### b. *Dr. Mahfoozi's 2011 Opinion*

On July 10, 2011, Dr. Mahfoozi completed a mental disorder questionnaire, whereby Dr. Mahfoozi noted that he has treated Plaintiff since December 8, 2009. Tr. 403. Dr. Mahfoozi stated that Plaintiff has a history of auditory hallucinations, paranoid ideations, and depression that have persisted since Plaintiff was twenty-nine, and that Plaintiff has a history of hospitalization for depression. Id. Dr. Mahfoozi added that Plaintiff "never got his high school diploma[,]" Plaintiff's IQ is "below average[,]" Plaintiff has problems with memory, and Plaintiff forgets things easily. Tr. 404.

When questioned about Plaintiff's affective status, Dr. Mahfoozi noted that Plaintiff complains of mood swings, depression, and auditory hallucinations. Tr. 405. When questioned about Plaintiff's reality contact, Dr. Mahfoozi opined that Plaintiff's speech is "brief" and his "affect is flat." Id. When questioned about Plaintiff's daily activities and social functioning, Dr. Mahfoozi noted that Plaintiff "doesn't do shopping [and] is socially isolated[,]" but that Plaintiff is able to use public transportation and can complete household tasks "very slow[ly]." Tr. 405-

---

[26] See Tr. 376, 651 (loose association assessed).

[27] See Tr. 376, 552, 553, 641, 651 (thought blocking assessed).

[28] See Tr. 387 (circumstantial thought process assessed).

[29] See Tr. 548, 637 (flights of ideas assessed).

[30] See Tr. 388, 548, 637 (stuporous alertness assessed).

[31] See Tr. 381, 655 (dizziness assessed).

[32] See Tr. 368, 399, 549, 554, 638 (increased duration psychiatric evaluations recommended).

12

06. Dr. Mahfoozi diagnosed Plaintiff with "major depression w[ith] psychotic features[,]" assigned a "guarded" prognosis of whether Plaintiff's condition could be expected to improve, and opined that Plaintiff is "unable to work [and] adapt to stresses common to the work environment." Tr. 406-07.

### c. *Dr. Mahfoozi's 2016 Opinion*

On May 5, 2016, Dr. Mahfoozi completed a medical source statement questionnaire, wherein he opined that Plaintiff would have "moderate" to "marked" limitations in his ability to perform certain work related activities as a result of his mental impairments. Tr. 926-28. Specifically, Dr. Mahfoozi opined that as a result of Plaintiff's anxiety, panic disorder, and extreme anger,[33] Plaintiff would be "moderately" limited in his ability to understand, remember, and carry out short, simple instructions or detailed work, and that Plaintiff would be "markedly" limited in his ability to make judgments on simple and complex work-related decisions. Tr. 926.

Dr. Mahfoozi also opined that Plaintiff's mental impairments would affect Plaintiff's ability to "respond appropriately to supervision, co-workers, and work pressures in a work setting." Tr. 927. Specifically, Dr. Mahfoozi opined that as a result of Plaintiff's concentration impairment, mood disorder, agitation, and panic disorder, Plaintiff would have "marked" limitations in his ability to:

- maintain attendance and punctuality during a workday and workweek;
- perform at a consistent pace without more than regular breaks in a workday;
- interact appropriately with the public, supervisors, or co-workers;
- sustain an ordinary routine without special supervision; and
- respond appropriately to changes in a routine work setting.

---

[33] The Court was unable to understand all of Dr. Mahfoozi's handwritten notes. As best as the Court can tell, Dr. Mahfoozi also opined that Plaintiff's "BP II, disorder" contributed to these moderate and marked limitations. Tr. 926. It is unclear, however, to what Plaintiff's "BP II" disorder refers.

13

Id. Dr. Mahfoozi added that Plaintiff's attention and focus, would be affected by Plaintiff's severe mood disorder, panic attacks, and panic disorder, and that these impairments would cause forgetfulness and a "memory deficit." Id. Dr. Mahfoozi also opined that Plaintiff could not manage benefits in his own best interest. Tr. 928.

### 3. Standard To Review ALJ's Assessment of Dr. Mahfoozi's Opinion

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison, 759 F.3d at 1015 (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 4. ALJ's Finding Not Supported By Substantial Evidence

Here, as an initial matter, the Court notes that the ALJ did not find that Dr. Mahfoozi's opinions were contradicted by another medical source's opinion. Therefore, the ALJ's reasons for rejecting Dr. Mahfoozi's opinions must be clear and convincing and supported by substantial evidence. Trevizo, 871 F.3d at 675 (citation omitted). The Court finds that the ALJ failed to meet this demanding standard here for the following reasons.

First, the ALJ's rejection of Dr. Mahfoozi's opinions because Plaintiff reported a decrease in symptoms, and because Dr. Mahfoozi's treatment notes repeatedly revealed unremarkable examination findings, erroneously relies on only portions of plaintiff's records, while ignoring evidence that supports the opposite conclusion. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). For example, as noted above, Dr. Mahfoozi assessed auditory and visual hallucinations; paranoid ideations or delusions; worried, sad, apathetic, depressed, angry, fearful, or anxious mood; major depression with psychotic features; panic attacks; dizziness; loose association and circumstantial thought processes; thought

15

blocking; stuporous alertness; and flights of ideas at least 177 times[34] throughout his longitudinal treatment history of Plaintiff. [35] These substantial findings by Dr. Mahfoozi, which the ALJ did not discuss when finding that Dr. Mahfoozi's opinions were unremarkable and due less weight, suggest that Plaintiff's symptoms had not waned over time, and, instead, were ongoing.

Similarly, Dr. Mahfoozi assessed GAF scores ranging from forty-two to fifty on fourteen different occasions throughout his longitudinal treatment of Plaintiff.[36] These GAF scores indicate "serious symptoms" and a "serious impairment" in social and occupational functioning, rather than unremarkable examination findings as the ALJ found. <u>Garrison</u>, 759 F.3d at 1002 n.4. The ALJ failed to discuss these GAF scores in her analysis of Dr. Mahfoozi's opinion. And while the ALJ later discussed and rejected some "GAF scores in the 45-50 range between December 2008 and July 2012," as "not reliable when viewed with the totality of the evidence[,]" including "[Plaintiff's] longitudinal mental health treatment records showing improvement with his depression, anxiety, auditory hallucinations and paranoia discussed above[,]" because the ALJ did not provide any citations to the record to indicate which GAF scores she was assessing, it is unclear whether any of these rejected GAF scores were assessed by Dr. Mahfoozi. Tr. 738.

However, to the extent that the ALJ was discussing the GAF scores assessed by Dr. Mahfoozi, Dr. Mahfoozi's GAF score assessments still contradict the ALJ's conclusion that Dr. Mahfoozi's treatment notes revealed only unremarkable examination findings for two reasons. First, the ALJ's rejection of Plaintiff's GAF scores in the forty-five to fifty range, fails to consider Plaintiff's lowest GAF score

---

[34] See the specific citations to the record listed above.

[35] The Court notes, again, that Dr. Mahfoozi's hand writing was difficult to read. Therefore, the Court only tallied the examination findings that it could affirmatively discern.

[36] <u>See</u> Tr. 635, 1026 (GAF score of 42 assessed); 368, 373, 549, 554, 638, 643, 648 (GAF score of 45 assessed); Tr. 378, 379, 396, 653 (GAF score of 48 assessed); Tr. 391 (GAF score of 50 assessed).

16

of forty-two that Dr. Mahfoozi assessed. Thus, the most severe GAF score assessed by Dr. Mahfoozi remains unassessed and undisturbed by the ALJ. Second, the ALJ's conclusion that the GAF scores are not supported by the record rests, again, on a conclusion that Plaintiff's symptoms improved, which, as discussed above, is a conclusion this Court rejects based on the evidence to the contrary that the ALJ did not appear to address. Specifically, the ALJ did not appear to consider over 100 assessments made by Dr. Mahfoozi throughout his longitudinal treatment of Plaintiff relating to Plaintiff's depression, anxiety, auditory hallucinations and paranoia.[37] This evidence that the ALJ overlooked or otherwise failed to discuss suggests that Plaintiff's depression, anxiety, auditory hallucinations and paranoia had continued, rather than waned as the ALJ found.

Accordingly, the Court finds that the ALJ's rejection of Dr. Mahfoozi's opinions because Plaintiff reported a decrease in symptoms, and because Dr. Mahfoozi's examination findings were unremarkable, are not supported by substantial evidence in the record and, thus, were neither clear and convincing, nor specific and legitimate reasons for rejecting Dr. Mahfoozi's opinions.

Second, the Court disagrees with the ALJ's conclusion that Dr. Mahfoozi's opinions were due little weight because they were "checklist opinions" that constituted "weak evidence at best." Tr. 736. Rather, Dr. Mahfoozi's opinions deserved deference because, as Plaintiff's treating physician, "he is employed to cure and has a greater opportunity to know and observe [Plaintiff] as an individual." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

---

[37] See Tr. 369, 371, 375, 381, 387, 390, 393, 394, 395, 398, 402, 553, 636, 642, 644, 646, 648, 650, 655, 924, 1027 (depressed mood assessed); Tr. 368, 369, 370, 373, 378, 379, 388, 389, 391, 396, 397, 402, 548, 549, 554, 635, 636, 637, 638, 643, 644, 645, 646, 648, 653, 1026, 1027 (major depression with psychotic features assessed); Tr. 381, 390, 391, 393, 394, 395, 398, 548, 635, 637, 655, 924, 1024 (anxiety or anxious mood assessed); Tr. 368, 369, 370, 373, 378, 379, 382, 383, 384, 385, 386, 387, 388, 389, 391, 402, 549, 553, 635, 636, 638, 642, 643, 644, 645, 648, 653, 655, 1026, 1027 (auditory hallucinations assessed); Tr. 368, 369, 370, 373, 374, 377, 378, 379, 382, 383, 384, 385, 386, 387, 388, 389, 391, 402, 548, 549, 553, 635, 637, 638, 642, 643, 644, 645, 648, 652, 653, 1026 (paranoid ideations or delusions assessed).

17

1990). This error is controlling when, as is the case here, there is a significant amount of evidence in Dr. Mahfoozi's treatment record that supports his conclusions. See Garrison, 759 F.3d at 1013 (9th Cir. 2014) (citation omitted) (the ALJ's "fail[ure] to recognize that the opinions expressed in [a] check-the-box form . . . [prepared by the plaintiff's treating doctor] were based on significant experience with [the plaintiff] and supported by numerous records . . . [were] entitled to weight that an otherwise unsupported and unexplained check-box form would merit" constituted an "egregious and important error[].").

Finally, the ALJ's reasons for discounting Dr. Mahfoozi's opinions are internally contradictory and not supported by the record. With respect to the internal contradictions in the ALJ's reasons, as discussed above, the ALJ rejected Dr. Mahfoozi's opinions because Plaintiff reported fewer symptoms and because Dr. Mahfoozi's examination findings were unremarkable. Tr. 736. The ALJ, however, also rejected Dr. Mahfoozi's opinions because Dr. Mahfoozi reported symptoms that were so severe, that the ALJ found it was "remarkable" that Plaintiff was able to "remain capable of being the caregiver for his six children[,]" and did not require "frequent" emergency care, hospitalization, or psychiatric sessions lasting more than fifteen minutes each. Id. It does not follow that Dr. Mahfoozi's opinions can be rejected for being both unremarkable and lacking in objective findings on the one hand, while also being rejected for being so severe that it is remarkable that Plaintiff is not constantly hospitalized and can care for his children on the other hand.

Moreover, the evidence cited by the ALJ in support of this finding—that Plaintiff was "the" caregiver of his children, and that Plaintiff's psychiatric sessions lasted no more than fifteen minutes each—is not supported by the record. With respect to Plaintiff's ability to care for his children, the record suggest that Plaintiff played only a small role in parenting, and that he did not remain "the" caregiver for his six children as the ALJ suggests. Id. For example, Plaintiff

18

testified at the hearing that he cannot do anything with his children on a regular basis, and that he has taken his youngest child to school when his brother-in-law cannot take her. Tr. 784-85. In addition, notes in Plaintiff's medical charts reveal Plaintiff's wife had an "impending eye surgery" and Plaintiff's "son and wife [had] worsening medical condition[s]" that in June 2013 and, shortly thereafter, in September 2013, Plaintiff became responsible for his children's transportation. Tr. 962, 969. Besides those few instances in the record of Plaintiff providing rides for his children when they, or his wife, were ill, however, the record suggests that Plaintiff was generally unable to care for his children. See e.g., Tr. 783 (Plaintiff testified that his wife "takes care of [their] little boy. He's blind."); Tr. 784 (Plaintiff testified that his wife "gets mad at [him] because she's [said that] instead of having six boys, [she] ha[s] seven with [Plaintiff]."); Tr. 785 (Plaintiff testified that his children "get mad at [him] because [he] do[es]n't want to do nothing with them. They want to go out, but [he] just get[s] real nervous when [he] see[s] people around [him]. [He's] always watching [his] back . . . [and] do[es]n't trust them.").

With respect to Dr. Mahfoozi's opinion lacking credibility because his appointments with Plaintiff were only fifteen minutes long, the record also does not support this conclusion. As noted above, Dr. Mahfoozi recommended five times throughout the record that Plaintiff's psychiatric evaluations increase in duration from fifteen to thirty minutes per session.[38] As such, because ALJ's reasons for discounting Dr. Mahfoozi's opinions are internally inconsistent and also not supported by the record, the Court finds that these reasons were neither clear and convincing, nor specific and legitimate.

Accordingly, because the ALJ failed to provide neither clear and convincing, nor specific and legitimate reasons supported by substantial evidence in the record

---

[38] See Tr. 368, 399, 549, 554, 638 (increased duration psychiatric evaluations recommended).

19

for rejecting Dr. Mahfoozi's opinion, the Court finds that remand for further proceedings is appropriate so that the ALJ can, again, examine Dr. Mahfoozi's opinions in light of the evidence discussed by the Court above. Because the Court remands as to this issue, the Court does not address the remaining issues raised by Plaintiff.

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

IT IS SO ORDERED.

DATED: 8/28/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge